IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION (TOLEDO)

| | | |
|---|---|---|
| BEVERLY PERRY<br>537 Touville St<br>Mendon, OH 45862 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| AUGLAIZE INDUSTRIES, INC.<br>330 West Boesel Ave<br>New Bremen, OH 45869 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>AUGLAIZE INDUSTRIES, INC.<br>c/o Greg A. Ferrall<br>330 West Boesel Ave<br>New Bremen, OH 45869 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| RICK DAVIS<br>c/o Auglaize Industries, Inc.<br>330 West Boesel Ave<br>New Bremen, OH 45869 | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Beverly Perry, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

**PARTIES, JURISDICTION & VENUE**

1. Beverly Perry is a resident of the city of Mendon, Mercer County, Ohio.

2. Auglaize Industries, Inc. ("Auglaize") is a corporation for non-profit with its principal place of business located at 330 West Boesel Ave, New Bremen, Auglaize County, Ohio 45869.

3. Auglaize is an employer within the meaning of R.C. § 4112.01 *et seq.*

4. At all times material herein, Rick Davis was employed as production floor supervisor at Auglaize.

5. As a production floor supervisor, Davis had authority to hire, fire, and/or discipline employees at Auglaize.

6. Davis acted in the interest of Auglaize with respect to employees of Auglaize.

7. Upon information and belief, Davis is a resident of the state of Ohio.

8. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Perry is alleging Federal Law Claims under the Family & Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

9. This Court has supplemental jurisdiction over Perry's state law claims pursuant to 28 U.S.C. § 1367 as Perry's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

10. All material events alleged in this Complaint occurred in Auglaize County.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. Within 300 days of the conduct alleged below, Perry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00715 against Auglaize.

13. Perry dually filed her charge with the EEOC and the Ohio Civil Rights Commission ("OCRC").

14. On or about August 2, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Perry regarding the Charges of Discrimination brought by Perry against Auglaize in EEOC Agency Charge No. 473-2021-00715.

15. Perry received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

16. Perry has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

17. Perry has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

18. On or around April 27, 2017, Perry began working for Auglaize.

19. Auglaize employed Perry as a community integration specialist.

20. Auglaize was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

21. At all times relevant herein, Perry was employed by Auglaize for at least 12 months and had at least 1,250 hours of service with Auglaize and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

22. Perry suffers from congestive heart failure and diabetes. ("Perry's Medical Conditions")

23. Perry's Medical Conditions substantially impair one or more of her major life activities including working.

24. As a result of suffering from Perry's Medical Conditions, Perry is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

25. As a result of suffering from Perry's Medical Conditions, Perry is and was disabled within the meaning of the ADA.

26. In the alternative, Auglaize perceived Perry as being disabled.

27. In the alternative, Auglaize perceived that Perry's Medical Conditions constituted a physical impairment.

28. Despite Perry's actual or perceived disabling condition, Perry was able to perform her essential job functions with or without reasonable accommodation.

29. Perry began working for Auglaize on or around April 27, 2017.

30. Perry began working for Auglaize as a community integration specialist.

31. On or around May 6, 2019, Perry was hospitalized due to congestive heart failure.

32. Beginning on or around May 6, 2019, Perry received inpatient medical treatment for five weeks.

33. As a result of her inpatient medical treatment, Perry did not report to work at Auglaize for five weeks in or around May and June 2019.

34. In or around June 2019, Perry recovered enough to return to work.

35. Upon Perry's return to work in or around June 2019, Perry was able to fulfill her core job duties with or without a reasonable accommodation.

36. In or around November 2019, Auglaize required Perry to complete a medical exam.

37. On March 22, 2020, Governor Mike DeWine and the Ohio Department of Health issued a Stay at Home Order, ordering most people to remain home.

38. Ohio has a strong public policy to stop the spread of the COVID-19 virus.

39. Per the Stay at Home Order, individuals who have COVID-19 virus symptoms should self-quarantine for a certain period of time, or until they are able to receive a negative result from a COVID-19 virus test.

40. Per the Stay at Home Order, individuals who have contact with an individual who is known to have the COVID-19 virus should self-quarantine for a certain period of time, or until they are able to receive a negative result from a COVID-19 virus test.

41. As a result of the COVID-19 pandemic, the Center for Disease Control ("CDC") and Occupational Safety and Health Administration ("OSHA") provided guidance for employers to mitigate exposure and spread of COVID-19. ("CDC and OSHA Guidance")

42. In or around July 2020, Perry's job duties included providing local transportation for clients.

43. In or around July 2020, CDC and OSHA Guidance required that company vehicles be properly cleaned and sanitized after each use.

44. In or around July 2020, CDC and OSHA Guidance required that company vehicles be operated at a reduced capacity to accommodate social distancing measures.

45. In or around July 2020, Auglaize declined to clean and sanitize its company vehicles after each use.

46. Auglaize neglected their duty to adhere to CDC and OSHA Guidance regarding cleaning and sanitation of company vehicles.

47. In or around July 2020, Auglaize declined to operate company vehicles at reduced occupant capacity.

48. In or around July 2020, Auglaize operated company vehicles with clients sitting directly next to one another.

49. In or around July 2020, Auglaize operated company vehicles in a manner that disregarded social distancing protocols.

50. Auglaize neglected their duty to adhere to CDC and OSHA Guidance regarding capacity of company vehicles to accommodate social distancing.

51. In or around July 2020, at least one vehicle driver employee at Auglaize tested positive for COVID-19.

52. In or around July 2020, Auglaize declined to sanitize company vehicles that had been recently operated by a COVID-19 positive member of its staff.

53. Auglaize failed to provide a safe environment for its employees and clients by ignoring their duty to comply with proper COVID-19 precautions.

54. At all times material herein, Brenda LNU was employed by Auglaize as a supervisor.

55. As a supervisor, Brenda LNU had authority to hire, fire, and/or discipline employees at Auglaize.

56. At all times material herein, Brenda LNU had indirect supervisory authority over Perry.

57. As a result of Perry's Medical Conditions, Perry is and was considered immunocompromised.

58. As a result of Perry's Medical Conditions, Perry is and was classified as high-risk for COVID-19.

59. In or around July 2020, Perry complained to Brenda LNU about Auglaize's unsafe COVID-19 practices ("Perry's Safety Complaint").

60. In Perry's Safety Complaint, Perry reported Auglaize's inadequate cleaning procedures and failure to enforce social distancing.

61. In Perry's Safety Complaint, Perry reminded Auglaize of Perry's Medical Conditions and that she was at a higher risk for COVID-19 than other, non-disabled employees.

62. Based on Auglaize policies, the incidents raised in Perry's Safety Complaint were significant workplace incidents.

63. Auglaize has a policy and practice of fully investigating significant workplace incidents.

64. Auglaize has a policy and practice of getting written statements from all participants to significant workplace incidents.

65. Auglaize has a policy and practice of getting written statements from all witnesses to significant workplace incidents.

66. Auglaize violated their policy and practice of fully investigating significant workplace incidents regarding Perry's Safety Complaint.

67. Auglaize violated their policy and practice of getting written statements from all participants to significant workplace incidents regarding Perry's Safety Complaint.

68. Auglaize violated their policy and practice of getting written statements from all witnesses to significant workplace incidents regarding Perry's Safety Complaint.

69. Auglaize's failure to follow their policy and practice of fully investigating significant workplace incidents was an adverse action against Perry.

70. Auglaize's failure to follow their policy and practice of getting written statements from all participants to significant workplace incidents was an adverse action against Perry.

71. Auglaize's failure to follow their policy and practice of getting written statements from all witnesses to significant workplace incidents was an adverse action against Perry.

72. Brenda LNU disregarded Perry's Safety Complaint and failed to take any action with respect to the unsafe work environment Perry faced.

73. Auglaize did not begin to properly clean and sanitize company vehicles following Perry's Safety Complaint.

74. Auglaize did not enforce social distancing practices in company vehicles following Perry's Safety Complaint.

75. Auglaize did not enforce proper COVID-19 safety procedures following Perry's Safety Complaint.

76. In or around October 2020, Perry sustained a severe injury to her shoulder ("Perry's Shoulder Injury").

77. As a result of Perry's Shoulder Injury, Perry was unable to drive or lift objects.

78. Perry's Shoulder Injury substantially impaired one or more of her major life functions, including working.

79. As a result of Perry's Shoulder Injury, Perry requested to utilize FMLA leave.

80. In or around October 2020, Perry was eligible to take FMLA leave.

81. In or around October 2020, Perry was entitled to take FMLA leave.

82. Beginning on or around October 2020, Perry took qualified FMLA leave.

83. While she was on protected FMLA leave, Perry sought medical treatment for Perry's Shoulder Injury at the Ohio Institute of Orthopedics.

84. While Perry was taking protected FMLA leave, the Ohio Institute of Orthopedics faxed medical documentation to Auglaize explaining Perry's Shoulder Injury and her need to take medical leave.

85. At all times material herein, Greg LNU was employed as CEO of Auglaize.

86. As CEO, Greg LNU had the authority to hire, fire, and/or discipline employees at Auglaize.

87. On or around November 11, 2020, Perry's physician determined that Perry was unable to return to work.

88. On or around November 11, 2020, Perry's physician extended Perry's FMLA leave.

89. On or around November 11, 2020, Perry's physician estimated that Perry would be able to return to work on or around December 28, 2020.

90. On or around November 11, 2020, Perry informed Greg LNU of her need to extend FMLA leave for her recovery.

91. On or around November 11, 2020, Perry provided documentation for her need to extend her FMLA leave to Greg LNU.

92. On or around November 11, 2020, Greg LNU terminated Perry's employment with Auglaize.

93. On or around November 11, 2020, Greg LNU sent Perry a termination notice via text message.

94. On or around November 11, 2020, Greg LNU alleged that Perry had failed to report to work on November 11, 2020.

95. To the extent that Perry had missed work on November 11, 2020, her absence should have been covered by protected FMLA leave.

96. Auglaize's purported reason for Perry's termination is pretext for retaliation in violation of the FMLA.

97. Auglaize's purported reason for Perry's termination is pretext for disability discrimination.

98. Upon information and belief, Auglaize has a progressive disciplinary policy. ("Discipline Policy")

99. Upon information and belief, the Discipline Policy calls for escalating levels of discipline for attendance infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

100. A verbal warning is the lowest level of discipline in the Discipline Policy.

101. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

102. A termination is the highest level of discipline in the Discipline Policy.

103. Perry did not receive a verbal warning.

104. Perry did not receive a written warning.

105. Perry did not receive a second written warning.

106. By terminating Perry, Auglaize skipped steps in the Discipline Policy.

107. Upon information and belief, Auglaize does not skip steps in the Discipline Policy when terminating the employment of non-disabled employees.

108. Upon information and belief, Auglaize does not skip steps in the Discipline Policy when terminating the employment of employees who have not utilized FMLA leave.

109. Upon information and belief, Auglaize does not skip steps in the Discipline Policy when terminating the employment of employees who have not complained about violations of COVID-19 safety protocol(s).

110. Upon information and belief, Auglaize permitted similarly-situated, non-disabled employees to retain their employment despite having attendance that was similar to or worse than Perry's.

111. Upon information and belief, Auglaize permitted similarly-situated employees who had not utilized FMLA leave to retain their employment despite having attendance that was similar to or worse than Perry's.

112. Upon information and belief, Auglaize permitted similarly-situated employees who had not complained about Auglaize's inadequate COVID-19 safety measures to retain their employment despite having attendance that was similar to or worse than Perry's.

113. Auglaize terminated Perry's employment for conduct where it would not terminate the employment of a non-disabled employee.

114. Auglaize terminated Perry's employment for conduct where it would not terminate the employment of an employee who had not taken FMLA-protected leave.

115. Auglaize terminated Perry's employment for conduct where it would not terminate the employment of an individual who had not made safety complaint(s).

116. There was a causal connection between Perry's Safety Complaint and Auglaize's termination of Perry.

117. Auglaize terminated Perry's employment because of her disability.

118. Auglaize terminated Perry's employment in retaliation for reporting violations of COVID-19 safety protocols.

119. Auglaize terminated Perry's employment in retaliation for utilizing FMLA leave.

120. As a direct and proximate result of Defendants' conduct, Perry has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA
### (Defendant Auglaize)

121. Perry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

122. Perry suffers from congestive heart failure and diabetes.

123. Perry's condition constituted a physical impairment.

124. Perry's condition substantially impaired one or more of her major life activities including working.

125. As a result of suffering from congestive heart failure and diabetes, Perry is disabled pursuant to 42 U.S.C. § 12101 *et seq*.

126. In the alternative, Auglaize perceived Perry as being disabled.

127. Despite any actual or perceived disability, Perry could perform her essential job functions with or without reasonable accommodation(s).

128. Auglaize treated Perry differently than other similarly-situated employees based on her disabling condition.

129. Alternatively, Auglaize treated Perry differently than other similarly-situated employees based on her perceived disabling condition.

130. Defendant terminated Perry's employment without just cause.

131. Defendant terminated Perry's employment based on her disability.

132. Alternatively, Defendant terminated Perry's employment based on his perceived disability.

133. Defendant violated the ADA when it discharged Perry based on her disability.

134. Alternatively, Defendant violated the ADA when it discharged Perry based on her perceived disability.

135. Auglaize violated the ADA by discriminating against Perry based on her disabling condition.

136. Alternatively, Auglaize violated ADA by discriminating against Perry based on her perceived disabling condition.

137. Perry suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 12101 *et seq*.

138. As a direct and proximate result of Defendant's conduct, Perry suffered and will continue to suffer damages, including economic and emotional distress damages.

## **COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq*.**
### **(Defendant Auglaize)**

139. Perry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

140. Perry suffers from congestive heart failure and diabetes.

141. Perry's condition constituted a physical impairment.

142. Perry's condition substantially impaired one or more of her major life activities including working.

143. As a result of suffering from congestive heart failure and diabetes, Perry is disabled pursuant to R.C. § 4112.01 *et seq*.

144. In the alternative, Auglaize perceived Perry as being disabled.

145. Despite any actual or perceived disability, Perry could perform her essential job functions with or without reasonable accommodation(s).

146. Auglaize treated Perry differently than other similarly-situated employees based on her disabling condition.

147. Alternatively, Auglaize treated Perry differently than other similarly-situated employees based on her perceived disabling condition.

148. Defendant terminated Perry's employment without just cause.

149. Defendant terminated Perry's employment based on her disability.

150. Alternatively, Defendant terminated Perry's employment based on her perceived disability.

151. Defendant violated R.C. § 4112.01 *et seq*. when it discharged Perry based on her disability.

152. Alternatively, Defendant violated R.C. § 4112.01 *et seq*. when it discharged Perry based on her perceived disability.

153. Auglaize violated R.C. § 4112.01 *et seq*. by discriminating against Perry based on her disabling condition.

154. Alternatively, Auglaize violated R.C. § 4112.01 *et seq*. by discriminating against Perry based on her perceived disabling condition.

155. Perry suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

156. As a direct and proximate result of Defendant's conduct, Perry suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: RETALIATION IN VIOLATION OF FMLA

### (All Defendants)

157. Perry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

158. During her employment, Perry utilized FMLA leave.

159. After Perry utilized her qualified FMLA leave, Defendants retaliated against her.

160. On the same day that Perry informed Auglaize of the need to extend her FMLA leave, Auglaize terminated Perry's employment.

161. Defendants retaliated against Perry by terminating her employment.

162. Defendants willfully retaliated against Perry in violation of U.S.C. § 2615(a).

163. As a direct and proximate result of Defendants' wrongful conduct, Perry is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT IV: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

### (All Defendants)

164. Perry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

165. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

166. Auglaize is a covered employer under FMLA.

167. Davis acted in the course and scope of his employment at Auglaize.

168. During her employment, Perry qualified for FMLA leave.

169. During her employment, Perry attempted to request FMLA leave.

170. Defendants terminated Perry's employment in order to prevent her from using qualified FMLA leave.

171. As a direct and proximate result of Defendants' conduct, Perry is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT V: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

**(Defendant Davis)**

172. Perry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

173. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

174. Davis aided, abetted, incited, coerced, and/or compelled Auglaize's discriminatory termination of Davis.

175. Davis aided, abetted, incited, coerced, and/or compelled Auglaize's discriminatory treatment of Davis.

176. Davis violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

177. As a direct and proximate result of Davis's conduct, Perry has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **COUNT VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

### **(All Defendants)**

178. Perry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

179. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

180. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

181. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

182. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

183. On March 22, 2020, Governor Mike DeWine and the Ohio Department of Health issued a Stay at Home Order, ordering most people to remain home.

184. Ohio has a strong public policy to stop the spread of the COVID-19 virus.

16

185. Per the Stay at Home Order, individuals who have COVID-19 virus symptoms should self-quarantine for a certain period of time, or until they are able to receive a negative result from a COVID-19 virus test.

186. Per the Stay at Home Order, individuals who have contact with an individual who is known to have the COVID-19 virus should self-quarantine for a certain period of time, or until they are able to receive a negative result from a COVID-19 virus test.

187. The CDC and OSHA issued guidelines for providing a safe work environment in the light of the COVID-19 pandemic.

188. Auglaize had a duty to enforce proper COVID-19 safety protocols, including reducing company vehicle capacity and implementing additional cleaning practices between clients.

189. Auglaize failed to adhere to proper COVID-19 safety protocols.

190. Auglaize did not reduce capacity in company vehicles.

191. Auglaize did not implement additional cleaning between clients in company vehicles.

192. Perry made a protected complaint of Auglaize's failure to adhere to COVID-19 safety protocols.

193. Defendants terminated Perry's employment after Perry made a complaint of Auglaize's failure to adhere to proper COVID-19 safety procedures.

194. Defendants retaliated against Perry for complaining of their failure to adhere to COVID-19 safety protocols.

195. Defendants' termination of Perry's employment jeopardizes these public policies.

196. Defendants' termination of Perry's employment was motivated by conduct related to these public policies.

197. Defendants had no overriding business justification for terminating Perry.

198. As a direct and proximate result of Defendant's conduct, Perry has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Perry demands from Defendant the following:

(a) Issue an order requiring the Defendant to restore Perry to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against the Defendant of compensatory and monetary damages to compensate Perry for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against the Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Perry's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

　*/s/ Paul Filippelli*＿＿＿＿＿＿＿＿＿
Fred Bean (0086756)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: fred.bean@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com

*Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Beverly Perry demands a trial by jury by the maximum number of jurors permitted.

                                            */s/ Paul Filippelli*
                                            Paul Filippelli (0097085)
                                            **THE SPITZ LAW FIRM, LLC**